Walter E. Ditmars and Jennie J. Ditmars v. Commissioner.
Ditmars v. Commissioner
Docket No. 80664.
United States Tax Court
T.C. Memo 1961-105; 1961 Tax Ct. Memo LEXIS 245; 20 T.C.M. (CCH) 495; T.C.M. (RIA) 61105; April 7, 1961
*245 1. During the taxable years 1954, 1955, and 1956, petitioner Walter E. Ditmars was reimbursed by his corporate employer for certain expenses which the respondent determined should be included in income on the ground that such reimbursed expenses were personal in nature. Petitioner established that a substantial part of such reimbursed expenses represented ordinary and necessary expenses paid during the respective taxable years for the production of income. Held, the respondent erred in including in income such substantial part of the reimbursed expenses, the amount of which for each year has been determined under the rule enunciated in Cohan v. Commissioner, 39 F. 2d 540. 2. Certain litigation expenses and a compromise payment made by petitioner in the settlement of a lawsuit brought against him held nondeductible under sections 162(a), 212(1) and (2), I.R.C. 1954; held, further, such items constituted personal expenses specifically nondeductible under section 262, I.R.C. 1954; held, further, such items are nondeductible under either section 165 or 1341, I.R.C. 1954. Emerson F. Davis, Esq., 60 Broadway, New York, N. Y., and Charles R. Van deWalle, Esq., for the petitioners. Frank V. Moran, Jr., Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined deficiencies in income tax for the years 1954, 1955 and *248 1956 in the amounts of $4,604.72, $6,510.89, and $2,578.73, respectively. In their petition petitioners have claimed overpayments in income tax for 1955 and 1956 in the amounts of $10,552.48 and $13,912.91, respectively. The errors assigned by petitioners are as follows: (a) The Commissioner added $6,924.16 to 1954 income, $8,537.06 to 1955 income and $4,666.23 to 1956 income as "expense reimbursement" whereas said sums together with similar sums which the Commissioner, "recognized" did not exceed the sums which the petitioner, Walter E. Ditmars, actually spent as business outlays on behalf of his employer and which were related to the production of income. (b) The Commissioner refused to allow as a deduction from 1955 income the sum of $16,279.17 paid by Walter E. Ditmars in that year for legal services and disbursements in defending a court proceeding against petitioner, Walter E. Ditmars, which grew out of and proximately resulted from his business activities and his activities entered into for profit. (c) The Commissioner refused to allow as a deduction from 1956 income the sum of $50,000.00 paid by Walter E. Ditmars in that year as a compromise payment in settlement of *249 a court proceeding against Walter E. Ditmars which grew out of and proximately resulted from his business activities and his activities entered into for profit and which sum of $50,000.00 constituted a return of and payment out of sums of money which had constituted taxable income to Walter E. Ditmars in years prior to 1956. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioners are husband and wife with principal residence in Arlington, Vermont. During the taxable years their principal residence was in West Hartford, Connecticut. They filed their income tax returns for the taxable years 1954, 1955, and 1956 and an amended return for 1956 with the district director for the Upper Manhattan District of New York. The husband, Walter E. Ditmars, will sometimes be referred to herein as petitioner. In 1938 petitioner was elected president of the Gray Telephone Pay Station Company. In 1939 this company changed its name to Gray Manufacturing Company, and will sometimes be referred to herein as Gray. Gray owned all the capital stock of three subsidiary companies, namely, the Gray Research and Development Corporation, the Audograph *250 Company of New York, and the Audograph Sales Company. Petitioner was also the president of the three subsidiaries. Gray had its manufacturing plant and principal offices in Hartford, Connecticut. It had branch offices in New York City and in Washington, D.C.
Petitioner's initial annual salary with Gray in 1938 was $15,000. During the taxable years here involved it was $50,000. During the taxable years here involved Gray and its subsidiaries manufactured and sold electronic dictation equipment, telephone answering sets, telephone dictation equipment, radar parts, and many electronic and electrical parts. Gray had approximately 200 distributors located throughout the United States and the world. It had between 700 and 900 employees. For the years 1954 and 1955 its sales and other income amounted to $8,212,161.78 and $8,802,014.67, respectively. On December 31, 1953, there were 222,902 shares of Gray's capital stock outstanding, which stock was held by 1,897 stockholders. As of December 31, 1954, and 1955 there were 288,844 and 297,994 shares of capital stock, respectively, outstanding. During each of those years Gray's stock was traded on the American Stock Exchange in New York *251 City. The top amount of Gray stock owned by petitioner at any one time during those years (except for certain options mentioned later in these findings) was between 700 and 900 shares. During the years here involved petitioner was member of the Union League Club, New York Yacht Club, the Columbia University Club, the Hartford Club, the Bankers Club, the Military Naval Club, the Army Navy Club, and the New York Chamber of Commerce. During the taxable years 1954, 1955, and 1956 Gray paid to petitioner the sums of $13,782.93, $15,345.09, and $9,224.91 as reimbursement for expenses allegedly incurred by petitioner. Petitioner did not include any portion of those amounts as income in the joint returns filed for those years. Respondent determined that of the reimbursements received by petitioner from Gray, he should have returned as income in the joint returns $6,924.16 for 1954, $8,537.06 for 1955, and $4,666.23 for 1956. In a statement attached to the deficiency notice, the respondent explained his determination thus: It has been determined that you received reimbursements from the Gray Manufacturing Company for expenses, and that you have failed to show that you expended all of *252 such amounts for expenses recognizable under the Internal Revenue Code as relating to the production of income. Under the provisions of section 61(a), Internal Revenue Code of 1954, the excess of the amounts received over recognized expenses is added to your taxable income as follows: 1954
1955
1956
Reimburse-
ments
$13,782.93
$15,345.09
$9,224.91
Recognized
expenses
6,858.77
6,808.03
4,558.68
Amounts added
to income
$ 6,924.16
$ 8,537.06
$4,666.23
The "recognized expenses" were all for travel, meals, and lodging while away from Hartford. The "amounts added to income" consisted of expenditures made by petitioner for entertainment, telephone, club dues and charges, as follows: 1954
1955
1956
Entertainment
$1,594.26
$1,794.34
$1,125.00
Telephone
632.95
436.62
Club dues and charges
4,696.95
6,306.10
3,541.23
Amounts added to income
$6,924.16
$8,537.06
$4,666.23
Petitioner periodically dictated his expense accounts to his secretary from records which he kept. These records show that petitioner actually expended large amounts for entertainment, telephone, club dues and charges, *253 none of which amounts was allowed by respondent as deductions. Of the amount which was added to income for the year 1954, $3,316.71 represented ordinary and necessary expenses paid during the taxable year for the production of income, and the balance of $3,607.45 represented expenses of a personal nature. Of the amount which was added to income for the year 1955, $3,994.60 represented ordinary and necessary expenses paid during the taxable year for the production of income, and the balance of $4,542.46 represented expenses of a personal nature. Of the amount that was added to income for the year 1956, $2,051.87 represented ordinary and necessary expenses paid during the taxable year for the production of income, and the balance of $2,614.36 represented expenses of a personal nature. Facts in re Assigned Errors (b) and (c) May M. Johnson (sometimes referred to herein as May) is the widow of Arthur G. Johnson, deceased, and the mother of petitioner Jennie J. Ditmars. May was the sole surviving trustee of the trust under the last will and testament of the deceased from February 28, 1932, until January 8, 1954, at which time she resigned, and the Surrogate's Court, Bronx County, *254 New York, appointed the Bronx County Trust Company as the substitute trustee of the said trust (sometimes referred to herein as the Johnson trust). Petitioner was never appointed a trustee of the Johnson trust, nor was he ever an advisor to any other trust. During the period from 1932 to 1936, inclusive, petitioner advised his mother-in-law, May, relative to the real estate, stocks and bonds owned by the Johnson trust for which he received $15,800 as compensation from May for this advice. Between 1932 and 1936 petitioner was the full-time manager of a branch of the New York stock brokerage firm of Taylor & Robinson. Petitioner received 50 percent of the net profits of such branch office in the form of a salary which ranged between $250 and $5,000 monthly. Between 1936 and 1938, petitioner continued as manager of various other brokerage offices under similar compensation arrangements. Between 1932 and 1938 the Johnson trust maintained stock brokerage accounts in the branch offices of which petitioner was manager. The Johnson trust paid approximately $200,000 in commissions to the firms which employed petitioner during this period. The Johnson trust was the largest and most important *255 account in petitioner's various branch offices during this period. Between 1932 and 1938 petitioner was a member of certain stock purchase syndicates. The Johnson trust, on petitioner's advice, bought and sold securities, including securities of Wayne Pump Co., Thompson Products, Inc., Atlantic Coast Fisheries Company and South America Gold and Platinum Co. during periods in which petitioner was a member of a syndicate which was buying and selling those securities. Certain of these transactions resulted in substantial losses to the Johnson trust. Between July 1938 and November 1938 the Johnson trust purchased 24,200 shares of Gray stock. Gray paid no dividends between 1938 and 1945. In 1938 Gray's stock was traded on the New York Curb Exchange. As of December 31, 1938, Gray had a total of 146,853 shares of capital stock outstanding. In 1939 petitioner obtained an option to purchase 25,000 shares of Gray stock at an average price of about $7.50 per share. In 1945 he exercised his option to the extent of 14,000 shares, which shares he sold in 1945 at a profit of $119,067.30. In November 1955, petitioner obtained a second option to purchase 25,000 shares of Gray stock at a price *256 of $15 per share. This second option expires December 31, 1962. On July 27, 1954, the Bronx County Trust Company, as substitute trustee under the last will and testament of Arthur G. Johnson, deceased, instituted a proceeding under section 205 of the Surrogate's Court Act of the State of New York against the petitioner. Petitioner appeared specially in this proceeding by his attorneys, and contested the jurisdiction of the court in a motion to dismiss the discovery proceeding. This motion to dismiss was denied by the Surrogate's Court and an appeal was taken to the New York Supreme Court, Appellate Division, first department. The order of the Surrogate's Court was affirmed by the New York Supreme Court on May 24, 1955. In re Johnson's Will, 285 App. Div. 1138, 141 N.Y.S. 2d 86. Leave to appeal was denied on June 7, 1955. Application of Bronx County Trust Company, etc., 286 App. Div. 801; 143 N.Y.S. 2d 616. Thereafter, petitioner testified before the Surrogate of Bronx County for a period of several weeks. The substitute trustee in said special proceeding charged that the petitioner in the instant proceedings, Walter E. Ditmars: (1) Carried *257 on the powers and duties of a (de facto) trustee for his own gain and enrichment and benefited personally to a most substantial degree; (2) Shared in $200,000 in brokerage commissions; (3) Used Johnson trust assets to control Gray to his financial advantage; (4) Used Johnson trust assets to speculate in securities in which he was personally interested; and (5) Improperly received fees for managing trust property. The petition in the said special proceeding prayed that the Surrogate's Court impose a constructive trust on the assets which Ditmars had allegedly improperly received from the Johnson trust. On June 23, 1955, the New York Journal American, in its financial section, printed a newspaper story concerning the legal proceeding pending against petitioner and made reference to the nature of the charges against him. Petitioner was advised by his attorneys and by the attorneys for Gray to settle the proceeding on the best terms which could be negotiated. On November 16, 1955, and February 2, 1956, petitioner agreed in open court to settle all claims against him which were brought by the substituted trustee of the Johnson trust by paying $50,000 to the substituted *258 trustee. As a result of such agreement, an order was entered on May 23, 1956, in that proceeding which provided, inter alia: ORDERED, ADJUDGED AND DECREED that respondent WALTER E. DITMARS shall pay to BRONX COUNTY TRUST COMPANY, as Successor Trustee of the trust created under the Last Will and Testament of ARTHUR G. JOHNSON, deceased, within ten (10) days after the entry of this decree, the sum of FIFTY THOUSAND ($50,000.) DOLLARS in cash, to be credited to the principal of the said trust. In 1955 petitioner paid his attorneys the sum of $16,279.17 as attorneys' fees and disbursements for representing him in the special proceeding brought by the substituted trustee of the Johnson trust. In 1956 petitioner paid $50,000 to the substituted trustee by delivering his personal check in that amount to the substituted trustee. Petitioner filed with respondent a claim for refund of $10,552.48 in income taxes for the taxable year 1955, in which he claimed as a deduction from gross income in that year the sum of $16,279.17 as attorney fees and disbursements for representing him in the special proceeding before the Surrogate's Court. This claim has not been allowed by the respondent. *259 Petitioner also filed an amended return for 1956 claiming as a deduction from gross income in that year the sum of $50,000 paid to the substituted trustee of the Johnson trust in 1956. The respondent disallowed the claimed deduction and, in a statement attached to the deficiency notice, said: It has been determined that a payment made by you in the amount of $50,000.00 to the Arthur G. Johnson Trust in 1956 was not an ordinary and necessary expense of carrying on a trade or business within the purview of section 162, Internal Revenue Code of 1954, or an ordinary and necessary expense of managing, conserving or maintaining property held for the production of income within the purview of section 212, Internal Revenue Code of 1954. Accordingly, the deduction claimed in that amount in your amended return for the taxable year 1956 is disallowed. If a petition to The Tax Court of the United States is filed against the deficiency proposed herein, the issues set forth in your claim for refund and/or your amended return should be made a part of the petition to be considered by The Tax Court in any redetermination of your tax liability. * * *260 * The attorneys' fees in the amount of $16,279.17 paid by petitioner in 1955 and the $50,000 payment by petitioner in 1956 in settlement of the suit instituted by the Bronx County Trust Company did not constitute ordinary and necessary expenses paid or incurred during those years in carrying on any trade or business, or for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income, or losses incurred in a trade or business, or losses incurred in any transaction entered into for profit, but instead constituted personal expenses. Opinion Considerable evidence was offered and received on the first assignment of error. This evidence showed that, during the taxable years, petitioner was president of Gray and its three subsidiaries; that he also held other offices in those corporations; that he devoted his full working time to the business of those companies; that during those years he expended over $13,782.93, $15,345.09 and $9,224.91, respectively, for travel, meals and lodging while away from home, entertainment, telephone, club dues and club charges; that he was reimbursed by Gray for all of those expenditures *261 in the respective amounts above stated; and that he did not report any part of those reimbursements in the joint returns as income. The evidence further shows that the respondent determined that $6,858.77, $6,808.03 and $4,558.69 of the reimbursements for the years 1954, 1955, and 1956, respectively, represented recognized expenses for travel, meals and lodging while away from home, and that the balance of the reimbursements of $6,924.16, $8,537.06 and $4,666.23 represented expenditures for entertainment, telephone, club dues and club charges of a personal nature and should have been reported as income under section 61(a) of the Internal Revenue Code of 1954, and were therefore not deductible under section 262 of the Code. We are convinced from the evidence that a substantial part of the reimbursed expenditures for entertainment, telephone, club dues and club charges represented ordinary and necessary expenses paid during the taxable years for the production of income. Under the rule enunciated in Cohan v. Commissioner, 39 F. 2d 540, we have found these amounts to be $3,316.71 for 1954, $3,994.60 for 1955, and $2,051.87 for 1956. We hold these amounts *262 are deductible for those years under section 212(1) of the Internal Revenue Code of 1954. Regarding the balance of the reimbursed expenditures for entertainment, telephone, club dues and club charges in the amounts of $3,607.45 for 1954, $4,542.46 for 1955, and $2,614.36 for 1956, we sustain the respondent's determination in adding such amounts to income for those years under section 61(a) of the 1954 Code. Opinion in re Assigned Errors (b) and (c) Petitioners contend they are entitled to deduct the litigation expenses and compromise payment under sections 162, 165, 212 and 1341 of the Internal Revenue Code of 1954. We will first consider sections 162 and 212, the material provisions of which are in the margin. [1] These material provisions, except paragraph (3) of section 212, are substantially the same as the much litigated section 23(a)(1)(A) and (a)(2) of the Internal Revenue Code of 1939, as amended. Section 212(3) was new in the 1954 Code. *263 As to section 162(a) we are unable to find that the expenditures of $16,279.17 and $50,000 were paid by petitioner during the respective taxable years 1955 and 1956 "in carrying on any trade or business," a finding which would be mandatory if petitioners were to prevail. It is stipulated that petitioner was never appointed a trustee of the Johnson trust. He merely advised May in connection with the trust, May being the sole surviving trustee of the Johnson trust from 1932 to 1954 and the mother-in-law of petitioner. He never acted as an advisor in any other trust. The record does not show how much of petitioner's time was devoted to advising his mother-in-law. Upon the entire record, we hold petitioner was not carrying on a trade or business while acting as advisor to the trustee of the Johnson trust and is therefore not entitled to the the claimed deductions under section 162 (a), supra. Estate of Hyman Y. Josephs, 12 T.C. 1069; Frederic A. Seidler, 18 T.C. 256; Carl F. Fayen, 34 T.C. 630. The case of Valentine E. Macy, Jr., 19 T.C. 409, affirmed 215 F. 2d 875 (C.A. 2, 1954), cited and relied upon by petitioner, *264 is distinguishable upon its facts. In the Macy case, the taxpayers were executors and trustees of a large estate and devoted a large part of their time to the management of the estate and the three residuary trusts provided for in the will. In holding that these activities amounted to the "carrying on" of a business, we said in part, at page 441: Their activities with respect to the various enterprises engaged a considerable amount of their time and attention over the period from their appointment on April 2, 1930, to the date of their accountings, February 17, 1942, first as executors and then as trustees of the "residuary trusts" following distributions to the trusts in 1937 and 1938 * * *. The petitioners here were more than mere casual executors, as was found to be the case in Estate of Hyman Y. Josephs, 12 T.C. 1069. In our opinion, the scope and duration of their activities were such as to constitute those activities the carrying on of a trade or business and within the exception to the general rule, as enunciated by the Supreme Court in the Pyne case. * * * Petitioner also urges that he is entitled to the claimed deductions under section 212 (1) and (2). [2] *265 In order for petitioner to prevail under section 212(1) or (2), he must show that the expenditure was for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Carl F. Fayen, supra. It is our view and we have so found that the litigation expenses and compromise payment were not expenses paid or incurred for any of these purposes. In our opinion, the litigation expenses and compromise payment, as more fully indicated in our discussion of section 165, infra, were "personal" in their nature as having been made as the result of the discovery proceedings brought by the substituted trustee of the Johnson trust, wherein, among other allegations, it was alleged that May, being - aided, abetted and induced by Walter E. Ditmars, her son-in-law, husband of Jennie Johnson Ditmars, one of the three vested remaindermen, completely changed the character of the trust herein from one for investment as required by law and by the terms of the will, to a speculative trading account dealing in the purchase and sale of securities involving thousands of transactions including short and margin sales; that the *266 said May M. Johnson, in effect, abdicated her duties and powers as trustee to said Walter E. Ditmars, and said Walter E. Ditmars assumed and took over the functions, duties and powers of trustee, and was in fact, during the period covered by May M. Johnson's accounting, trustee of the said trust estate, and as such trustee in fact dominated and controlled said May M. Johnson, trustee in law; that the said Walter E. Ditmars assumed and carried on the powers and duties of the trustee, as aforesaid, for his own benefit and for his own gain and enrichment, and that he has benefited personally to a most substantial degree and to the detriment of the trust estate. The compromise payment of $50,000 was made for the purpose of settling all claims against petitioner which were made by the substituted trustee of the Johnson trust and the litigation expenses of $16,279.17 were paid by petitioner to his lawyers for representing him in the proceedings brought by the substituted trustee. We hold these expenditures constituted personal expenses which are specifically nondeductible under section 262 of the 1954 Code. [3] It follows they are not deductible under section 212 *267 (1) or (2) of the Code. Lykes v. United States, 343 U.S. 118; Carl F. Fayen, supra; Lewis v. Commissioner, 253 F. 2d 821, 826 (C.A. 2, 1958) affirming 27 T.C. 158; Davis v. United States, - F. Supp. - (Ct. Cl. Mar. 1, 1961). Cf. Bert B. Rand, 35 T.C. 956 (Mar. 20, 1961).
Regarding petitioner's contention that the litigation expenses and compromise payment are deductible as losses under section 165 of the 1954 Code [4] the respondent in his reply brief states that this issue was not raised "at any time prior to brief and accordingly should not be considered." In view of the assignments of error heretofore set out, we have considered the issue but find it lacking in merit. In view of our holding on the first issue it is obvious that the amounts claimed as deductions were not "losses incurred in a trade or business" under section 165(c)(1), supra. Frederic A. Seidler, supra, p. 259. Neither do we think the evidence shows *268 that petitioner incurred these expenditures "in any transaction entered into for profit." Petitioner received some compensation ($15,800) for advice given to May during the years 1932 to 1936 but the evidence does not show that these payments by petitioner of $16,279.17 in 1955 and of $50,000 in 1956 were made in any transaction as a result of this advice given in those early years. The irregularities were alleged to have taken place up to the time the substitute trustee was appointed on January 8, 1954. At the time petitioner agreed in open court to settle all claims against him by paying $50,000 to the substituted trustee, he was denying most emphatically that he had committed any of the alleged irregularities but because of the unfavorable publicity he was getting in the New York newspapers his attorneys and the attorneys of Gray persuaded him to settle on the best terms which could be negotiated. This petitioner did and in so doing we find and hold that petitioner incurred a "personal" expense, the deduction of which is expressly prohibited by section 262, supra. Cf. Lewis v. Commissioner, supra, wherein the Second Circuit said: (p. 826) *269 The effect upon the individual's trade or business, harmful though it may be, is merely incidental to the harm which he otherwise suffers. Similarly, in the present case, the expenses incurred by the petitioner were to defend himself against charges directed toward him as a person. Detrimental to his trade the charges may have been; yet they were not, as in Heininger, Howard and Salt, directed to his occupational activities as such. See Hinkle v. Commissioner, 1942, 47 B.T.A. 670. We conclude that the expenses incurred by taxpayer in connection with the incompetency proceedings were personal expenses, the deduction of which is expressly prohibited by Section 24(a)(1). Cf., also, Goldsborough v. Burnet, 46 F. 2d 432 (C.A. 4, 1931), affirming 18 B.T.A. 181; Stephen H. Tallman, 37 B.T.A. 1060, 1064. Finally, petitioner contends the items are deductible under section 1341, I.R.C. 1954. [5] This provision in the Code is new. In H. Rept. No. 1337, 83d Cong., 2d Sess., the Committee on Ways and Means, in a detailed discussion of the proposed section 1341, said in part (p. A294): If the taxpayer included an item *270 in gross income in one taxable year, and in a subsequent taxable year he becomes entitled to a deduction because the item or a portion thereof is no longer subject to his unrestricted use, and the amount of the deduction is in excess of $3,000, the tax for the subsequent year is reduced by either the tax attributable to the deduction or the decrease in the tax for the prior year attributable to the removal of the item, whichever is greater. Under the rule of the Lewis case (340 U.S. 590 (1951)), the taxpayer is entitled to a deduction only in the year of repayment. We do not see wherein the petitioner in any way comes within the provisions of section *271 1341. Its contentions thereunder are therefore denied. Upon the entire record, we hold that petitioners are not entitled to any deduction from gross income by reason of the litigation expenses of $16,279.17 paid in 1955 or the compromise payment of $50,000 made in 1956. Decision will be entered under Rule 50. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax.↩
2. See footnote 1.↩
3. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
4. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * *↩
5. SEC. 1341. COMPUTATION OF TAX WHERE TAXPAYER RESTORES SUBSTANTIAL AMOUNT HELD UNDER CLAIM OF RIGHT. (a) General Rule. - If - (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item: (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; * * *↩